# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

## 10-251

DERRICK GABRIEL AND PATRICK
GABRIEL, INDIVIDUALLY AND ON
BEHALF OF THEIR MOTHER,
MABLE GABRIEL, DECEDENT

VERSUS

LOUISIANA ORGAN PROCUREMENT
AGENCY AND DR. THIAGARAJAN
RAMCHARAN

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2007-1411 "D"
HONORABLE EDWARD RUBIN, DISTRICT JUDGE

**********

JAMES T. GENOVESE
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Oswald A. Decuir, and James T. Genovese, Judges.

Thibodeaux, Chief Judge, concurs.

AFFIRMED.

R. Scott Iles
Post Office Box 3385
Lafayette, Louisiana 70502
(337) 234-8800
COUNSEL FOR PLAINTIFFS/APPELLANTS:
    Derrick Gabriel and Patrick Gabriel,
    individually and on behalf of their mother,
    Mable Gabriel, decedent

**Sidney W. Degan**
**Richard C. Badeaux**
**Maryann G. Hoskins**
**Travis L. Bourgeois**
**DEGAN, BLANCHARD & NASH**
**400 Poydras Street, Suite 2600**
**New Orleans, Louisiana  70130**
**(504) 529-3333**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Louisiana Organ Procurement Agency**

**GENOVESE, Judge.**

Plaintiffs, Derrick Gabriel and Patrick Gabriel, appeal the trial court's grant of summary judgment in favor of Defendant, Louisiana Organ Procurement Agency (LOPA). For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On January 5, 2006, Mabel Gabriel (Ms. Gabriel) was admitted to Lafayette General Medical Center (LGMC) in Lafayette, Louisiana, where it was determined that she was suffering from a massive cerebral hemorrhage. Ms. Gabriel became comatose, was placed on a respirator, and was declared brain-dead. Ms. Gabriel's family then made the decision to donate her organs. Said donations were effectuated through LOPA.

According to Plaintiffs' Petition for Damages filed on March 20, 2007, against LOPA and Dr. Thiagarajan Ramcharan,[1] "[i]n the process of organ harvest, the employees, agents[,] and actors on behalf of LOPA[,] spilled caustic substances onto Ms. Gabriel's body causing disfiguring injuries to her body." Pursuant to La.Civ.Code art. 2315.6,[2] Plaintiffs' suit alleged that the "[d]amages sustained . . .

---

[1]Dr. Ramcharan performed the organ procurement surgery on Ms. Gabriel.

[2]Louisiana Civil Code Article 2315.6 provides, in pertinent part:

A. The following persons who view an event causing injury to another person, or who come upon the scene of the event soon thereafter, may recover damages for mental anguish or emotional distress that they suffer as a result of the other person's injury:

(1) The spouse, child or children, and grandchild or grandchildren of the injured person, or either the spouse, the child or children, or the grandchild or grandchildren of the injured person.

. . . .

B. To recover for mental anguish or emotional distress under this Article, the injured person must suffer such harm that one can reasonably expect a person in the claimant's position to suffer serious mental anguish or emotional distress from the experience, and the claimant's mental anguish or emotional distress must be severe, debilitating, and foreseeable. Damages suffered as a result of mental anguish or emotional distress for injury to another shall be recovered only in accordance with this Article.

include mental anguish associated with seeing their [m]other in a disfigured fashion, as well as having to conduct a funeral with a closed casket thereby not being able to properly experience the grieving process with the loss of their [m]other."

Plaintiffs filed a First Supplemental and Amending Petition for Damages on June 30, 2008, wherein they alleged that "Dr. Ramcharan either enjoyed an employment relationship or an agency relationship with [LOPA]." Plaintiffs further asserted that "[i]n accordance with the provisions of [La.Civ.Code art.] 2320,[3] [LOPA] is answerable in solido with Dr. Ramcharan for his acts of negligence causing the injuries and disfigurement to [Ms.] Gabriel and the damages claimed by the [P]laintiffs herein." Alternatively, Plaintiffs alleged that LOPA "provided professional liability insurance in force, effect, and in favor of the [D]efendant, Dr. Thiagarajan Ramcharan. Accordingly, [LOPA] is duty[-]bound to indemnify and defend the physician for the injuries complained of herein."

On August 22, 2008, LOPA filed an Answer to Petition for Damages and First Supplemental and Amending Petition for Damages denying Plaintiffs' claims. On June 18, 2009, LOPA filed a Motion for Summary Judgment asserting that Dr. Ramcharan was not its employee; therefore, LOPA cannot be held liable for

---

[3]Louisiana Civil Code Article 2320 provides:

> Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.
>
> Teachers and artisans are answerable for the damage caused by their scholars or apprentices, while under their superintendence.
>
> In the above cases, responsibility only attaches, when the masters or employers, teachers and artisans, might have prevented the act which caused the damage, and have not done it.
>
> The master is answerable for the offenses and *quasi*-offenses committed by his servants, according to the rules which are explained under the title: *Of quasi-contracts, and of offenses and quasi-offenses*.

2

Dr. Ramcharan's actions. In support of its Motion for Summary Judgment, LOPA attached as exhibits: Exhibit A – Agreement for the Procurement of Organs and Tissue for Transplantation by and between LGMC and LOPA; Exhibit B – Plaintiffs' Initial Complaint to the Commissioner of Administration, State of Louisiana Medical Review Panel (MRP); Exhibit C – Plaintiffs' Amended Complaint to the Commissioner of Administration, State of Louisiana MRP; Exhibit D – the Opinion and Reasons for Opinion of the MRP dated March 18, 2008; Exhibit E – Plaintiffs' Petition for Damages; Exhibit F – Plaintiffs' First Supplemental and Amending Petition for Damages; and Exhibit G – Affidavit of Kelly Ranum, Executive Director of LOPA. The affidavit of Ms. Ranum attests, in pertinent part:

6. Dr. Thiagarajan Ramcharan is not an employee of LOPA.

7. There has never been a contract of employment between [LOPA] and Dr. Thiagarajan Ramcharan; and, more specifically, there was not a contract of employment or service contract in effect on or about January 5, 2006.

8. There has never been a service contract between [LOPA] and Dr. Thiagarajan Ramcharan; and, more specifically, there was not a contract of employment or service contract in effect on or about January 5, 2006.

9. There is no contractual relationship between LOPA and Dr. Ramcharan.

10. LOPA does not have any personnel records of Dr. Thiagarajan Ramcharan.

11. LOPA does not have any pay stubs, payment records[,] or wage records regarding Dr. Thiagarajan Ramcharan, including services performed in the organ recovery of Mabel Gabriel.

12. Dr. Ramcharan did not receive any compensation from LOPA for recovering Mabel Gabriel's organs.

13. Dr. Ramcharan has never submitted a bill for services rendered for LOPA in the organ recovery of Mabel Gabriel.

3

14. LOPA has never provided Dr. Ramcharan with staff support during the recovery of tissue or organs from organ donors in the form of surgical assistance, nurses[,] or couriers, etc.[,] and specifically did not provide such support during the recovery of Mable Gabriel's organs.

In their opposition to LOPA's motion, Plaintiffs relied upon LOPA's offering of the Agreement for the Procurement of Organs and Tissue for Transplantation by and between LGMC and LOPA. Specifically, Plaintiffs relied heavily upon paragraph four therein, which states:

LOPA assures [LGMC] that it assumes total responsibility for the actions of LOPA personnel, and that said personnel are covered by organ and tissue professional liability insurance. LOPA will ensure only appropriately credentialed and qualified individuals will be used to perform organ and tissue retrievals. Physicians affiliated with LOPA will be licensed to practice medicine and qualified and trained to perform organ procurement services. These physicians must meet the qualifications established by LOPA, its Board of Directors and the United Network of Organ Sharing (UNOS). LOPA personnel will present [LGMC] with appropriate LOPA identification.

Plaintiffs argued that as a consequence of the agreement between LOPA and LGMC, "LOPA has agreed to provide liability insurance to indemnify the physician who made the error in this case. Therefore, irrespective of direct negligence on the part of any LOPA employee, LOPA is duty[-]bound pursuant to its indemnity agreement to provide indemnity, insurance, and defense for this matter."

The matter was heard on August 24, 2009, at which time LOPA's motion for summary judgment was granted. A judgment was signed by the trial court on September 8, 2009, and Plaintiffs have appealed therefrom.

**ASSIGNMENT OF ERROR**

In their sole assignment of error, Plaintiffs assert that "[t]he trial court erred in failing to find that an organ harvest surgeon dispatched by the Louisiana Organ Procurement Agency was not a physician 'affiliated with LOPA . . .' so as to activate

4

the indemnification agreement that enured to the benefit of the patient and Plaintiffs."

## LAW AND DISCUSSION

Our Louisiana Supreme Court has instructed us on the standard of review relative to a motion for summary judgment as follows:

> A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Duncan v. U.S.A.A. Ins. Co.*, [06-363 (La. 11/29/06)], 950 So.2d 544, [*see* La.Code Civ.P.] art. 966. A summary judgment is reviewed on appeal *de novo*, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; *i.e.* whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Wright v. Louisiana Power & Light*, [06-1181 (La. 3/9/07)], 951 So.2d 1058[]; *King v. Parish National Bank*, [04-337 (La. 10/19/04)], 885 So.2d 540, 545; *Jones v. Estate of Santiago*, [03-1424 (La. 4/14/04)], 870 So.2d 1002[.]

*Samaha v. Rau*, 07-1726, pp. 3-4 (La. 2/26/08), 977 So.2d 880, 882-83 (footnote omitted). Louisiana Code of Civil Procedure Article 966(C)(2) provides:

> The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

On appeal, Plaintiffs argue that "[t]he question of fact for the [c]ourt is whether this surgeon dispatched to perform the organ harvest procedure is a physician ' . . . affiliated with LOPA . . .' so as to activate the provisions of Paragraph 4 of the indemnification agreement." Plaintiffs assert "[c]learly, the trial court was incorrect in finding that Dr. Ramcharan was not an affiliated physician with LOPA since his only purpose for being present at [LGMC] was for [the] organ harvest of

5

[Ms.] Gabriel."

LOPA counters by arguing that Plaintiffs' reliance upon the contract between LGMC and LOPA is a misguided effort to establish a vicarious relationship between LOPA and Dr. Ramcharan. We agree.

The contract between LOPA and LGMC, and specifically paragraph four thereof, provides that LOPA will "assume[] total responsibility for the actions of LOPA personnel[.]" In this case, no evidence was introduced proving that Dr. Ramcharan was, in fact, "LOPA personnel." To the contrary, the affidavit of Ms. Ranum proves that Dr. Ramcharan was not "LOPA personnel." Plaintiffs wrongly rely upon an indemnity agreement between LOPA and LGMC in their effort to prove a vicarious relationship between LOPA and Dr. Ramcharan.

Pursuant to our *de novo* review of the record, we conclude that the trial court was correct in holding that Plaintiffs failed to produce sufficient evidence to establish that they will be able to prove their claim at trial; thus, no genuine issue of material fact exists, and LOPA's Motion for Summary Judgment was properly granted.

## DECREE

For the above reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed against Plaintiffs/Appellants, Derrick Gabriel and Patrick Gabriel.

**AFFIRMED.**

6